IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PEARL DYANE VILLARREAL | § | |
| | § | |
| | § | |
| VS. | § | Civil Action No. B-03-205 |
| | § | |
| | § | |
| HARTFORD FIRE INSURANCE COMPANY | § | |

### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Hartford Fire Insurance Company (hereinafter Hartford) files this Motion for Partial Summary Judgment. Hartford moves for Summary Judgment on Plaintiff's claims for breach of contract and violations of §§21.21 and 21.55 of the Texas Insurance Code, violation of the DTPA and breach of the common law duty of good faith and fair dealing.

### I.

### BACKGROUND INFORMATION

Hartford issued an automobile insurance policy to Luis Villarreal. A copy of the policy is attached as Exhibit A-1.[1] The term of the policy was January 1, 2000, through June of 2000. See Exhibit A-1. On January 1, 2000 at approximately 3:20 a.m., Mr. Villarreal's daughter, the Plaintiff Pearl Dyane Villarreal, was allegedly a passenger in a vehicle owned by Ramiro Ochoa and driven by Joe E. Frausto. See Plaintiff's Original Petition.[2] The vehicle driven by Mr. Frausto was

---

[1] Exhibit A-1 is incorporated within this motion by reference. Additionally, Exhibit A-1 is authenticated as a business record and thereby attached to the business record affidavit of Mike Paxton. The affidavit and policy are marked as Exhibit A and A-1.

[2] See Plaintiff's Original Petition wherein Plaintiff alleges the information contained in this "background information" paragraph. Plaintiff's petition is referenced solely for this alleged information and Defendant in no way admits the truth of the allegations contained in Plaintiff's Original Petition.

allegedly involved in a single car collision. See Plaintiff's Original Petition. Mr. Frausto and the vehicle driven by Mr. Frausto were reportedly uninsured. See Plaintiff's Original Petition. On January 18, 2002, Pearl Dyane Villarreal submitted through her attorney a request for PIP benefits in the amount of $14,547.70. See copy of application attached as Exhibit A-2. Hartford paid her request for PIP benefits. See Exhibit A. Plaintiff sought UM/UIM benefits and filed suit against Hartford. See Plaintiff's Original Petition.

Mr. Villarreal's policy with Hartford contains a condition precedent. See Exhibit A-1. The policy provides Hartford is only obligated to pay what the insured is "legally entitled to recover" from the uninsured or underinsured motorist. See Exhibit A-1. In the present case, no judgment or agreement has been obtained in connection with the issue of whether Mr. Frausto is liable and the extent of any damages owed to Pearl Dyane Villarreal. See Exhibit A.

## II.

## STANDARD

Summary Judgment is appropriate because the pleadings together with the attached affidavit and documents, when viewed in the light most favorable to Plaintiff, show that there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986), Fed. R.Civ.P. 56(c).

## ANALYSIS

1. **Plaintiff's breach of contract claim is barred as a matter of law.**

Plaintiff alleges Hartford breached its duty to pay UM/UIM benefits and is therefore liable for breach of contract. See Plaintiff's Original Petition paragraphs X and XI. This claim is barred as a matter of law. The insurance policy in question contains a condition precedent. See Exhibit A-1.

The policy provides Hartford is only obligated to pay what the insured is "legally entitled to recover" from the uninsured or under insured motorist. See Exhibit A-1. In the present case, there has been no legal determination or authorized settlement establishing that Plaintiff is "legally entitled to recover" from Mr. Frausto. See Exhibit A. Accordingly, Plaintiff's breach of contract claim is premature and barred as a matter of law.

Specifically, Mr. Villarreal's insurance policy with Hartford contains the following condition precedent:

> A. We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

See Exhibit A-1, page 9. Similarly, the summary judgment evidence establishes there has been no legal determination that Plaintiff is "legally entitled to recover" from Mr. Frausto. See Exhibit A. Nor has Hartford authorized any settlement between Plaintiff and Mr. Frausto. See Exhibit A.

The Texas Supreme Court has held a contractual obligation to pay under the UM/UIM provision does not arise until after the tort feasor's liability is established. *See Henson v. Southern Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 653 (Tex.2000); *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 792 (Tex.1974); *State Farm Mut. Auto Ins. Co. v. Grayson*, 983 S.W.2d 769, 770 (Tex. App.-San Antonio 1998, no pet.); *Mid-Century Ins. Co. v. Barclay*, 880 S.W.2d 807, 811-12 (Tex.App.-Austin 1994, writ denied); *Sites v. Zuloaga,* 830 S.W.2d 752, 753 (Tex.App.-Austin 1992, no writ).

In other words, absent an agreement, an insurer's failure to pay UM/UIM benefits prior to entry of a judgment will not support a claim for breach of contract. *Henson*, 17 S.W.3d at 653. The claim is not yet mature and therefore there is no contract to breach. *Id.* Accordingly, in an underinsured or uninsured motorist claim, the insurer has no duty to pay the insured until one of two events occurs: Either the insurer agrees with the insured as to liability and the amount of damages,

or a jury returns a verdict establishing liability and the amount of damages. *Wellisch v. USSA*, 75 S.W.3d 53, 56-57 (Tex.App-San Antonio, 2002, pet. denied). *Henson* 17 S.W.3d at 653; *Franco*, 505 S.W.2d at 792; *Grayson*, 983 S.W.2d at 770; *Barclay*, 880 S.W.2d at 811-12; *Sites*, 830 S.W.2d at 753. In the present case, Hartford, does not agree with Plaintiff about the amount she was allegedly damaged by the accident and therefore Hartford's alleged liability to Plaintiff will not become reasonably clear until a jury determines her alleged damages.

The facts in *Henson* are similar to the facts in the underlying case. Henson was injured in a vehicle driven by Millican when the vehicle collided with a truck driven by Contreras. *Id.* at 662. Henson submitted a claim to his insurance carrier and to Millican's insurer for uninsured/underinsured motorist's benefits. *Id.* Henson then sued Millican and Contreras for negligence, and sued both insurance companies for benefits. *Id.* at 652-653. With the carriers' permission, Henson settled with Contreras for her policy limits of $20,000. *Id* at 653. The claims against the insurers were severed and both agreed to be bound by the judgment rendered in the suit against Millican. *Id.* The jury awarded damages to Henson, finding Contreras one hundred percent negligent and entered a take nothing judgment against Millican. *Id.* The insurers tendered policy limits but Henson refused the tender, demanding prejudgment interest. *Id.* The trial court refused to award prejudgment interest and Henson appealed. The court of appeals and the Texas Supreme Court affirmed. *Id.*

Of significance to the present case, the Texas Supreme Court discussed the applicable insurance policies. Both policies provided the companies were obligated to pay UM/UIM benefits "which a covered person is legally entitled to recover..." *Id.* This is the same condition precedent as contained in the underlying Hartford policy. The Supreme Court discussed the condition precedent and held Henson did not become legally entitled to recover benefits until the jury

established Contreras' liability. *Id.* Therefore, the Court stated Henson was not entitled to compensation for the lost use of the funds and was not entitled to prejudgment interest on top of the policy benefits. *Id.*

The reasoning used by the Supreme Court in *Henson* is applicable to the instant case. The relationship between the Plaintiff and Hartford is one of a contractual nature. The duties of both parties are established by the contractual insurance policy. The policy or contract requires a legal determination that Plaintiff is entitled to recover from Mr. Frausto. In the present case, there has been no judicial determination that Mr. Frausto is liable or that Pearl Dyane Villarreal is entitled to damages and the extent or amount of such alleged damages. Pursuant to the Supreme Court's decision in *Henson*, Hartford requests summary judgment on Plaintiff's breach of contract claim.

**2. Plaintiff's claim for violation of Article 21.55 is barred as a matter of law.**

Plaintiff's claim for violation of Article 21.55's prompt payment provisions is barred as a matter of law. As set forth above and pursuant to the Hartford policy at hand, there has been no determination that Plaintiff is legally entitled to UM/UIM benefits. Due to the condition precedent language in the policy, Hartford is not subject to the imposition of Insurance Code article 21.55 penalties until there is a judicial determination of Mr. Fausto's liability and the amount of Plainitff's alleged damages. *Wellisch*, 75 S.W.3d at 56. Texas Courts have repeatedly held an insurer has no obligation to pay UIM benefits until the insured becomes legally entitled to those benefits. *Id.* Legal entitlement to UIM benefits requires a settlement or a judicial determination of liability and damages following trial on the merits. *Id.* Absent this determination, Hartford does not owe Plaintiff UM/UIM benefits and therefore Hartford cannot be liable for Article 21.55 penalties.

A recent case from the Fourth Court of Appeals in Texas involves similar facts and the same

issue. *See Wellisch v. United Services Auto. Ass'n*, 75 S.W.3d 53, 56 (Tex.App.-San Antonio 2002, pet. denied) In *Wellisch*, the parents of a child killed in an auto accident filed suit against their insurer for violation of 21.55, breach of duty of the good faith and fair dealing and mental anguish, after their insurer denied their UM/UIM claim. The district court granted the insurer's motion for summary judgment on all claims and the appellate court affirmed. The trial court severed out the extra-contractual claims. The jury awarded the insured damages on their contractual claim. On the same day the judgment on damages was entered, the insurer paid the UM/UIM benefits to the insured. The insured argued the insurer violated 21.55 by denying and not paying UM/UIM benefits sooner. *Id.* at 56.

The appellate court concluded the insurer did not violate 21.55 because there had been no determination that the insured was "legally entitled to recover" from the uninsured driver. The appellate court determined the insurer's liability arose on the date the trial court entered final judgment following a determination that the uninsured driver's negligence caused the accident and a jury returned a verdict favorable to the family of the deceased. The appellate court specifically concluded the insurer's liability did not arise on the date of the accident. Because the insurer paid the UIM claim on the same day the trial court entered the judgment, the appellate court determined the insurer did not violate Article 21.55's prompt payment provision. The appellate court therefore affirmed the summary judgment in favor of the insurer on the plaintiff's Article 21.55 claim. *Id.* at 56.

A similar conclusion was reached by the Austin Court of Appeals in *Sites v. Zuloaga*, 830 S. W.2d 752 (Tex.App.-Austin 1992, no writ). In *Zuloaga*, the insured filed suit against the uninsured driver to establish liability and damages. The insured also sued the insurer for failure to promptly pay her claim. The trial court denied the insured's claim against the insurer. The insured

appealed. The court of appeals affirmed holding the policy contained a condition precedent and the condition was not satisfied prior to judgment. Therefore, the insured was not entitled to damages since there was no breach of contract. The condition precedent in *Zuloaga*, is identical to the condition precedent in the underlying Hartford policy. *Id* at 753.

In the underlying case, there has been no final judgment or agreement reached with Hartford as to the liability of the uninsured driver or the plaintiff's alleged damages. See Exhibit A. Accordingly, pursuant to *Wellisch* and *Zuloaga*, Hartford requests this court grant summary judgment on Plaintiff's 21.55 claim.

**3. Plaintiff's claims for violation of 21.21, violation of the Deceptive Trade Practices Act and breach of the common law duty of good faith and fair dealing are barred as a matter of law.**

    **a.    These claims are barred because there is no evidence of any bad faith on the part of Hartford.**

Plaintiff's extra-contractual bad faith claims are barred as a matter of law because there is no evidence of bad faith on the part of Hartford. At most, there is a value dispute on an uninsured motorist claim.

In order to impose liability on Hartford for violations of the duty of good faith and fair dealing, the DTPA and Article 21.21, Plaintiff is required to show that Hartford knew or should have known that it was reasonably clear that Plaintiff's UM claim was covered but failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement. *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F3d 875 (5th Circuit 2004) citing *Universal Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997)(enunciating the standard for breach of the common law duty of good faith and fair dealing); *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App. - Tyler 1994, no writ) ("The various other extra-contractual claims require the same predicate for recovery as bad

faith causes of action."). In the present case, there is no evidence that Hartford knew or should have known that it was reasonably clear that Plaintiff's UM/UIM claim was covered but failed to attempt in good faith to effectuate a prompt, fair and equitable settlement. *Giles*, 950 S.W.2d at 55. Further, "evidence that only shows a bonafide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *United States Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997).

A similar issue was addressed by United States Fifth Circuit Court of Appeals in *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875 (5th Cir. 2004). In *Hamburger*, the insured filed suit against his insurer for breach of the UM/UIM clause and for bad faith in denying his UM/UIM claim. The United States District Court for the Southern District of Texas granted the insurer's partial summary judgment on the insured's extra-contractual claims. On appeal, the Fifth Circuit affirmed and held the insurer did not act in bad faith in denying payment of the UM/UIM benefits prior to the jury's determination of the insured's damages. The appellate court further held the district court did not abuse its discretion in granting the insurer summary judgment on the bad faith claim without first allowing the insured to depose the insurer's representatives. *Hamburger*, 361 F.3d at 880.

More specifically, the extra-contractual claims asserted in *Hamburger* are identical to the extra-contractual claims asserted in the instant case. As in the present case, the insured in *Hamburger* asserted the insurer violated its duty of good faith and fair dealing, the DTPA and Article 21.21. The insurer urged the Fifth Circuit Court of Appeals to grant summary judgment on the insured's extra- contractual claims arguing there was no evidence to support the claims.

In seeking payment of the UM/UIM benefits, the insured in *Hamburger*, submitted medical bills totaling approximately nineteen thousand dollars and claimed additional damages for pain and suffering. The insured submitted no information or documentation to support his pain and suffering

claim. The insurer wrote back and essentially stated the information submitted by the insured did not warrant a UM/UIM payment because policy limits of twenty five thousand and a PIP payment of ten thousand were adequate compensation for the claim.

The Fifth Circuit characterized the insurer's letter as reflecting a bona fide dispute about the insurer's liability for the UM/UIM claim. The insured argued the offer or evaluation of his claim was so low as to reflect a pretext for bad faith. The Fifth Circuit disagreed. The court stated:

> Even if State Farm assumed during its evaluation that the accident caused all of Hamburger's claims, it cannot constitute bad faith per se for State Farm at that time to view $16,039.10, which is the difference between the medical bills and the insurance benefits already paid, as sufficient compensation for Hamburger's subjective pain and suffering. Therefore, the trial court properly granted summary judgment for State Farm on Hamburger's extra-contractual claims.

*Hamburger*, 361 F. 3d at 881.

In the present case, in seeking payment of UM/UIM benefits, Plaintiff has not submitted to Hartford any written documentation or evidence. Plaintiff merely claims additional damages for pain and suffering, lost wages and disfigurement. The only medical bills ever submitted to Hartford were those totaling $4,547.70 and paid by PIP. See Exhibit A. Like the insured in *Hamburger*, Plaintiff submitted no information or documentation to support her additional alleged damages. See Exhibit A. Hartford responded and requested documentation to support her lost wage claim, copies of her medical records and pictures of her disfigurement. See Exhibit A. Plaintiff did not provide documentation to support her claim for additional damages. See Exhibit A.

On September 8, 2003, Plaintiff filed the underlying case. Prior to filing suit, Hartford offered Plaintiff the sum of $11,000. See Exhibit A. The offer from Hartford reflects a bonafide dispute about Hartford's liability for UM/UIM benefits. Although Plaintiff contends that

Defendant's offers were too low,[3] Hartford's offers cannot constitute bad faith per se. Plaintiff's submitted medical bills totaling $4,574.70, Hartford paid these bills and offered Plaintiff <u>an additional</u> $11,000. See Exhibit A. The sum of $11,000 is sufficient compensation for Plaintiff's alleged subjective pain and suffering, undocumented lost wages and alleged disfigurement. Essentially, Hartford offered Plaintiff more than 2 ½ times her medicals to settle this case.

In *Hamburger*, the Fifth Circuit concluded the insurer's offer of less than two times the insured's medicals was sufficient to negate the insured's bad faith claims. The insurer in Hamburger paid the insured nearly $19,000 for submitted medical bills and an additional $16,000 for undocumented subjective pain and suffering. The fifth Circuit stated the trial court properly granted summary judgment for the insurer on the insured's extra-contractual claims. *Id* at 880.

As the summary judgment evidence establishes in this case, Plaintiff's bad faith claim is barred as a matter of law. *See, e.g. Hamburger*, 361 F.3d at 880. Plaintiff's remaining extra contractual causes of action are also barred, as a matter of law, because they only re-characterize the bad faith claim. A defense to the bad faith claim defeats all of the extra-contractual causes of action. *Escajeda v. Cigna Ins. Co.*, 934 S.W.2d 402 (Tex.App.-Amarillo 1996, no writ); *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32 (Tex.App.-Tyler 1994, writ denied); *State Farm Lloyds v. Polasek*, 847 S.W.2d 279 (Tex.App.-San Antonio 1992, writ denied). For these reasons, and the reasons set forth above, Hartford respectfully requests this Court grant summary judgment on Plaintiff's extra-contractual claims.

### Motion to Sever and Motion to Abate

**In the alternative, Hartford requests this Court sever and abate Plaintiff's 21.21, DTPA and common law claims.**

---

[3] See Plaintiff's Original Petition, paragraph IX.

Texas Courts have held a claim for UM/UIM benefits is contractual in nature and therefore separate and distinct from bad faith claims. *E.g., In re Trinity Universal Ins. Co.*, 74 S.W.3d 463, 467 (Tex.App.-Amarillo 2001, orig. proceeding); *State Farm Mut. Auto Ins. Co. v. Wilborn*, 835 S.W.2d 260, 261 (Tex.App.-Houston [14th Dist.] 1992, orig. proceeding). In most cases, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). Hartford asserts it will be substantially prejudiced if the bad faith claims are not severed and abated.

If both claims are tried together, Hartford will be forced to choose between (1) insisting on its rights to exclude evidence of settlement negotiations and coverage determinations, thereby losing the advantage of showing that it was attempting to be reasonable in defense of the bad faith claims, and (2) putting on such evidence and risking a prejudicial inference that it has admitted liability on the contract. *Allstate Ins. Co. v. Hunter*, 865 S.W.2d 189, 193-94 (Tex.App.-Corpus Christi 1993, no pet.).

The parties in the underlying case have engaged in settlement negotiations. See Exhibit A. There is written correspondence and documentation pertaining to settlement of this case. See Exhibit A. Hartford asserts it will be prejudiced if both claims are tried together and it is unlikely that it will be able to obtain a fair trial on the underlying negligence claim. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996).

Hartford recognizes that severance is not mandatory; however, Hartford relies on cases that have held that when an insurer has made an offer to settle one claim, a severance of the tort and contract claims is required to avoid undue prejudice to the insurer in its defense of the coverage dispute. *See Mid-Century Ins. Co. of Texas v. Lerner*, 901 S.W.2d 749, 752-53 (Tex.App.-Houston [14th Dist.] 1995) (orig. proceeding); *Northwestern Nat'l Lloyds Ins. Co. v. Caldwell*, 862 S.W. 2d

44, 46-47 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding); *F.A. Richard & Assocs. v. Millard*, 856 S.W.2d 765, 767 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding); *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 673 (Tex.App.-Houston [1st Dist.] 1993) (orig. proceeding); *State Farm Mut. Auto Ins. Co. v. Wilborn*, 835 S.W.2d 260, 262 (Tex.App.-Houston [14th Dist.] 1992) (orig. proceeding). The rationale of the above cases is that, ordinarily, offers of settlement are inadmissable to establish liability on a negligence claim, but such offers may nevertheless be admissible on an extra contractual claim to rebut evidence of bad faith. *See Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W. 627, 629 (Tex. 1996); *Scurlock Oril Co. Smithwick*, 724 S.W.2d 1, 4 (Tex. 1986) (holding that settlement offers are inadmissible to prove or disapprove liability on a claim).

For these reasons, Hartford requests that in the event summary judgment is not granted on Plaintiff's DTPA, 21.21 and common law bad faith claims, that such claims be severed, assigned a separate cause number and abated.

**Conclusion**

For the above reasons, Hartford respectfully requests this court grant summary judgment on Plaintiff's claims for breach of contract, violation of sections 21.55 and 21.21 of the Texas Insurance Code, violation of the Texas Deceptive Trade Practices Act and breach of the common law duty of good faith and fair dealing. In the alternative, in the event this Court does not grant summary judgment on Plaintiff's 21.21, DTPA and common law bad faith claims, Hartford requests this court sever such claims, assign them a separate cause number and abate the new case until resolution of the underlying litigation. Hartford further requests that any causes of action upon which summary judgment is granted are severed out. Finally, Hartford requests any and all other relief to which it may be justly entitled.

Respectfully submitted,

HODGE, JAMES & GARZA, L.L.P.
Attorneys and Counselor at Law
P.O. Box 534329 (78553)
134 East Van Buren Street
Third Floor, Suite 310
Harlingen, Texas 78550
Telephone: (956) 425-7400
Facsimile: (956) 425-7707

_____
Anthony B. James
Federal I.D. No. 3785
State Bar No. 10537300

Lisa M. Crouch
Federal I.D. No. 15307
State Bar No. 06571040
Attorneys for Defendant,
HARTFORD FIRE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing, Defendant's Motion for Partial Summary Judgment, has been served on the 18th day of November, 2004, to all attorneys of record by placing same in a post office or official depository under the care and custody of the United States Postal Service, via personal delivery as follows:

CMRRR# 7003 2260 0000 0437 7375
Mr. Hugo Xavier De Los Santos
Attorney at Law
900 Vance Jackson Road
San Antonio, Texas 78201

_____
Lisa M. Crouch